PITTMAN, Judge.
Carol Biggs and West Goldwire, LLC, appeal from a judgment of the Jefferson Circuit Court upholding the denial by the City of Birmingham (“the City”) of their application for a liquor license. We affirm.

Facts and Procedural History

Biggs and her father own a two-and-one-half-acre parcel of property (“Biggs’s property”) on Ishkooda-Wenonah Road in the western section of Birmingham. There is a building on the property that had formerly been used as a single-family residence and then as a day-care center but that has been vacant since 2004. West Goldwire City Park is directly across the street from Biggs’s property, and there is a public basketball court next door to her property. The property is apparently located within the boundaries of the Industrial Center neighborhood of Birmingham. However, the West Gold-wire neighborhood boundary is two blocks from Biggs’s property and the Garden Highlands neighborhood boundary is one block from her property. The circuit court’s judgment explained:
“One of the confusing issues in the case is the location of the relevant property. It is ... located in or near three Birmingham neighborhoods: Garden Highlands Neighborhood; Industrial Center Neighborhood; and West Gold-wire Neighborhood. Any of the neighborhoods could be interested in [the liquor-license application]. In deciding whether to grant a liquor license to an applicant, one of the most important factors for consideration by the City Council is the recommendation of the Neighborhood Association.[1]
In 2009, Biggs formed Urban Network and Technology Association (“UNTA”) as a not-for-profit association whose purpose, Biggs testified, was to provide networking, educational, and social opportunities for area small-business owners. Biggs intended the building on her property to be used as the office and regular meeting place for UNTA and to be available to UNTA members, for a fee, as an “event space” for parties, weddings, and other social events at which alcohol might be served. In connection with her application for a private-club Class II liquor license and a Division I dance permit for UNTA, Biggs made a presentation to the Garden Highlands Neighborhood Association on August 17, 2009. That association opposed the liquor-license and dance-permit applications on the basis that the building was located in a residential neighborhood. The city council voted to deny the applications on August 25, 2009.
*710 A few months later, Biggs created West Goldwire, LLC (hereinafter referred to as “the LLC”), for the purpose of operating a bed-and-breakfast facility in the building— an enterprise that, the circuit court suggested (and Biggs agreed), “would sound more appealing to the neighborhood” than her first proposal for the use of the building. Biggs sought a special retail liquor license for the bed-and-breakfast facility, which would do business as “Hilltop Manor Tourist Home and Gardens.” In making her application on behalf of the LLC, Biggs was informed that her property was actually located in the Industrial Center neighborhood rather than the Garden Highlands neighborhood. Biggs subsequently appeared before the Industrial Center Neighborhood Association, which supported her application for a liquor license by a vote of six to zero.
At a meeting of the city council on December 8, 2009, Councilman James E. Roberson, Jr., whose district included the West Goldwire neighborhood, suggested that the West Goldwire Neighborhood Association should also be consulted about Biggs’s liquor-license application. Roberson moved to table the matter of Biggs’s application, and the city council agreed. Biggs testified that she had subsequently contacted the president of the West Gold-wire Neighborhood Association and had asked to appear at that association’s next meeting but that the president had informed her that there was no reason for her to appear because she had already received approval from the Industrial Center Neighborhood Association. Biggs stated that she had never been informed of the meeting date for the West Goldwire Neighborhood Association, and, she said, she assumed that she was not required to attend. Biggs appeared before the city council at its meeting on December 19, 2009, but consideration of her liquor-license application was again deferred.
On January 5, 2010, the city council considered and unanimously denied Biggs’s application. Biggs did not attend the city council meeting that day because, she said, she could not miss work. She explained that she had been employed as a librarian for the City’s school system and that January 5 was the day that the City’s schools reopened after the Christmas holidays.
Biggs, UNTA, and the LLC appealed to the Jefferson Circuit Court from the city council’s denial of their applications. The circuit court consolidated the appeals. The circuit court heard the testimony of Biggs and Councilman Roberson, received documentary and photographic evidence, and viewed an online audio-visual recording of the Birmingham City Council meeting on January 5, 2010. In its November 18, 2010, judgment, the circuit court made the following findings of fact and conclusions of law:
“City Councilman James E. Roberson, Jr., testified that [Biggs’s] building was in his district and that he was familiar with the property and its surroundings. The Council discussed the standards for issuing a liquor license and found that a liquor license in this location would be a potential nuisance. [Councilman Roberson] testified that he was opposed to the liquor license application for several reasons. It is across the street from a city park which was used by families. The neighborhood leadership did not want a liquor licensee in their residential neighborhoods.
[[Image here]]
“The court has considered the testimony and has looked at the photographs of the property in question and of the surrounding area. The area is a nice residential neighborhood and the area near [Biggs’s] property is attractive for *711 public use by families and children. There are recreational facilities adjacent to the property. The uncontradicted evidence before the Court is that the Birmingham City Council considered the seven factors spelled out in the statute. In considering these factors, the Council could have reasonably determined that the granting of a liquor license to [Biggs, on behalf of UNTA or the LLC,] could create a nuisance or otherwise adversely affect the public health, safety and welfare of the adjacent residential neighborhoods.
“Under the facts presented to the City Council and to this court, the court is not willing to say that the City was arbitrary and capricious in its denial of the applications for a liquor license. The Court should not substitute its judgment for the decision of the Birmingham City Council.”
Biggs and the LLC timely appealed to the Supreme Court of Alabama from the circuit court’s judgment.[1] The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Standard, of Review

In City of Mobile v. Simpsiridis, 733 So.2d 378 (Ala.1999), our supreme court set out the applicable standard of review.
“The trial court’s findings of fact are presumed to be correct when they are based on ore tenus evidence. Because § 28-l-6[, Ala.Code 1975,] provides for de novo review in the circuit court from the disapproval of an application for a license to sell alcohol, the usual presumption in favor of the findings by the city or administrative agency is not applicable here.... In the case of an appeal to the circuit court, the statute requires a circuit judge to hear the evidence de novo, i.e., without any presumption in favor of the municipality....
“On appeal from the order of the circuit court, we are required to indulge every presumption in favor of the trial court’s findings of fact. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala.1987); McCrary v. Butler, 540 So.2d 736 (Ala. 1989). The trial court’s judgment in such a case will be affirmed if, ‘under any reasonable .aspect of the testimony, there is credible evidence to support the judgment.’ Jones v. Jones, 470 So.2d 1207, 1208 (Ala.1985). Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala.1989).”
733 So.2d at 381-82.

Discussion

Section 28-1-6, Ala.Code 1975, pertains to the “[i]ssuance of licenses for sale of intoxicating beverages in Class 1 or Class 2 municipalities.”[2] Section 28 — 1—6(a)(2) permits an appeal from a Class 1 municipality’s denial of a liquor license to the circuit court for “de novo proceedings.” That section provides:
*712 “Proceedings in the circuit courts to review an action of a Class 1 municipal governing body denying'approval of an application shall be expedited de novo proceedings heard by a circuit judge without a jury who shall consider any testimony presented by the city governing body and any new evidence presented in explanation or contradiction of the testimony. Any proceeding to review the denial of approval of a license application shall be commenced within 14 days of the action by the municipal governing body and shall be set for hearing by the court within 30 days thereafter.”
Section 28-l-6(a)(l)b. provides that a circuit court may set aside the denial of approval of a liquor license by a Class 1 municipal governing body if
“the municipal approval was arbitrarily or capriciously denied without a showing of one of the following:
“1. The creation of a nuisance.
“2. Circumstances clearly detrimental to or which would adversely affect the public health, safety, and welfare of the adjacent residential neighborhoods.
“8. A violation of applicable zoning restrictions or regulations.
“4. An individual applying for the license has a prior conviction involving the use of alcohol or a controlled substance.
“5. The proximity of the business to a school or child care facility and the business hours of the operation will create a harmful environment for the children.
“6. The traffic congestion created by licensing the proposed location will endanger others.
“7. Any other reason that poses a risk.”
Biggs and the LLC argue that the circuit court applied the wrong standard of review to the City’s decision to deny them a liquor license. Citing Simpsiridis, supra, for the principle that § 28-1-6 “provides for de novo review in the circuit court,” 738 So.2d at 382, which review is “without any presumption in favor of the municipality,” id., Biggs and the LLC argue that the circuit court erroneously accorded the City’s decision a presumption of correctness, as evidenced, they say, by the circuit court’s statement that it would “not substitute its judgment for the decision of the Birmingham City Council.”
Although the Simpsiridis court did state that “ § 28-1-6 provides for de novo review in the circuit court,” 733 So.2d at 382, the court qualified that statement in two respects. First, the court explained that the proceedings in the circuit court are de novo in the sense that the circuit court may consider new evidence that was not before the municipality. 733 So.2d at 381 (stating that “[t]he statute requires the trial judge ... to consider all the evidence before the municipality and any new evidence that may be offered at the de novo hearing in the circuit court” (emphasis added)). Second, the court explained that “the statute requires a circuit judge to hear the evidence de novo, i.e., without any presumption in favor of the municipality.” 733 So.2d at 382. In the latter respect, § 41-22-20(k), Ala.Code 1975, the judicial-review provision of the Alabama Administrative Procedure Act, §§ 41-22-1 through -27, Ala.Code 1975 (“AAPA”), and cases construing that provision are instructive. Section 41-22-20(k) provides that
“[ejxcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions *713 of fact, except where otherwise authorized by statute.”
By negative implication, § 41-22-20(k) provides that when judicial review is by trial de novo (as it was in the instant case), the decision maker’s determination is not to be “taken as prima facie just and reasonable,” or accorded a presumption of correctness. Similarly, the Simpsiridis court held that, in de novo proceedings under § 28-1-6, the circuit court is required to “hear the evidence ... without any presumption in favor of the municipality.” 733 So.2d at 382. Notwithstanding the prohibition against according the decision maker’s ruling a presumption of correctness in de novo proceedings under § 41-22-20(k), the AAPA nevertheless permits a reviewing court to reverse a decision maker’s order if the reviewing court concludes that the order is, among other things, arbitrary or capricious. See § 41-22-20(k)(7). See generally Ex parte Sutley, 86 So.3d 997, 999 (Ala.2011). By the same token, § 28 — 1—6(a)(l)b. provides that the circuit court may set aside the denial of approval of a liquor license by a Class 1 municipal governing body if “the municipal approval was arbitrarily or capriciously denied.”
The arbitrary-and-capricious standard of review encompasses the principle that a reviewing court is not permitted to substitute its judgment for the decision maker. Cf. Phase II, LLC v. City of Huntsville, 952 So.2d 1115 (Ala.2006) (affirming a judgment of the circuit court entered after the circuit court had reviewed, by common-law writ of certiorari, a decision by a Class 3 municipality to deny a liquor license). In Phase II, our supreme court stated that “[a]n arbitrary and capricious standard of review does not permit the trial court or [an appellate court] to substitute its judgment for the judgment of the city council.” 952 So.2d at 1121. The court described the arbitrary-and-capricious standard of review as follows:
“ ‘In reviewing a municipal council’s exercise of its legislative discretion to approve or disapprove the issuance of a restaurant liquor license, this Court must apply an “arbitrary-and-capricious” standard.’ Ex parte Trussville City Council, 795 So.2d 725, 727 (Ala. 2001).
“ ‘ “A determination is not ‘arbitrary’ or ‘unreasonable’ where there is a reasonable justification for its decision or where its determination is founded upon adequate principles or fixed standards. State Department of Pensions and Security v. Whitney, 359 So.2d 810 (Ala.Civ.App.1978).
“ ‘ “If reasonable minds may well be divided as to the wisdom of [the] administrative board’s actions, or there appears some reasonable basis for the classification made by the board, such action is conclusive and the court will not substitute its judgment for that of the administrative body.” ’ ”
Phase II, 952 So.2d at 1119 (quoting City of Huntsville v. Smartt, 409 So.2d 1353, 1357-58 (Ala.1982), quoting in turn Hughes v. Jefferson Cnty. Bd. of Educ., 370 So.2d 1034, 1037 (Ala.Civ.App.1979)). Based on the foregoing authorities, we conclude that the circuit court’s statement that it would “not substitute its judgment for the decision of the Birmingham City Council” evidenced its application of the arbitrary-or-capricious standard of review and cannot be equated with its having erroneously accorded the City’s decision a presumption of correctness.
Biggs and the LLC next argue that the circuit court’s decision is due to be reversed because, they say, there was no evidence to support the City’s decision, which, they contend, was based solely on speculation that granting a liquor license *714 “could” or “might” create a nuisance or adversely affect the adjacent residential neighborhoods. In support of that argument, Biggs and the LLC cite Simpsiridis, supra, and King v. City of Birmingham, 885 So.2d 802 (Ala.Civ.App.2004). Simp-sindis and King are distinguishable, and the statute under which those cases were decided was different from the version of § 28-1-6 that was in effect at times pertinent to this appeal.
First, neither Simpsiridis not King involved a residential neighborhood; there was no argument made and no evidence presented in either case that “the premises themselves were inherently unsuitable as the location of a lounge serving alcoholic beverages.” King, 885 So.2d at 805. “Notwithstanding the absence of restrictions in a statute or ordinance, licensing authorities have as a general rule been permitted to deny licenses where the proposed location is improper by reason of the location and its surroundings. 48 C.J.S. Intoxicating Liquors § 136; 45 Am.Jur.2d Intoxicating Liquors, § 138.” Broughton v. Alabama Alcoholic Beverage Control Bd., 348 So.2d 1059, 1060 (Ala.Civ.App. 1977) (holding that when applicant’s establishment was directly across the street from an elementary school and diagonally across from a church, a decision to grant .a liquor license would “ ‘not be in the best interest of the community, based on complaints of citizens in the immediate proximity of the applicant’s place of business’ ”).
Moreover, in Simpsiridis, there was no neighborhood opposition to granting the license and in King there was, this court held, no legally cognizable opposition. The applicant in King proposed to operate a lounge in the same commercial location where a lounge had been operating for decades. The first licensee had operated a lounge there for almost 30 years without complaint from the neighborhood; the most recent licensee’s operation, however, had generated numerous complaints from the neighborhood, but the applicant had no connection with that prior licensee, intended to cater to an older and presumably less rowdy clientele, and planned more limited hours of operation. This court held that denial of the license based solely upon the conduct or reputation of a prior licensee in the same location was arbitrary and capricious.
Second, when Simpsindis and King were decided, § 28-l-6(a)(l)b. provided that a circuit court could set aside the municipality’s denial of approval of a liquor license as arbitrary or capricious only when the municipality had failed to make a showing that one of three conditions existed:
“1. The creation of a nuisance;
“2. Circumstances clearly detrimental to adjacent residential neighborhoods; [or]
“3. A violation of applicable zoning restrictions or regulations.”
The pertinent portion of the statute has since been amended twice, effective August 4, 2004, and July 1, 2006. In 2004, additional material was inserted in subpar-agraph 2, and, in 2006, subparagraphs 4 through 7 were added. At all times pertinent to this appeal, the statute has provided that a circuit court is authorized to set aside the denial of approval of a liquor license by a Class 1 municipal governing body if
“the municipal approval was arbitrarily or capriciously denied without a showing of one of the following:
“1. The creation of a nuisance.
“2. Circumstances clearly detrimental to or which would adversely affect the public health, safety, and welfare of the adjacent residential neighborhoods.
*715 “3. A violation of applicable zoning restrictions or regulations.
“4. An individual applying for the license has a prior conviction involving the use of alcohol or a controlled substance.

“5. The proximity of the business to a school or child care facility and the business hours of the operation will create a harmful environment for the children.

“6. The traffic congestion created by licensing the proposed location will endanger others.
“7. Any other reason that poses a risk.”
§ 28-l-6(a)(l)b. (emphasis added). Discussion at the city council meeting on January 5, 2010, focused on subparagraph 1 and the emphasized portions of the statute as the bases for denying the liquor-license application.
When the legislature added new subpar-agraph 5 (“[t]he proximity of the business to a school or child care facility and the business hours of the operation will create a harmful environment for the children”), it made explicit what was understood but not expressed in the previous version of the statute — that the sale of intoxicants presents a danger to children. Based on that legislative premise, subparagraph 5 necessarily places in issue the proximity of the licensee’s business to the place where children will be and whether the licensee’s hours of operation coincide with the time that children are present. Although Biggs’s property is not in close proximity to a school or a child care facility, it is directly across the street from a public park and next door to a public basketball court, both places that children are likely to be found during the daytime and early evening hours. The record contains no evidence of the LLC’s intended business hours, but the proposed bed-and-breakfast facility would presumably operate during the daytime and early evening hours.
Because subparagraph 5 is premised on harm to children, with the only debatable questions being the proximity of Biggs’s property to children and the LLC’s business hours — the answers to both of which questions support the City’s decision to deny the license application in this case— we reject the argument made by Biggs and the LLC that the City’s evidence established only a potential nuisance or the possibility of an adverse effect on the “public health, safety and welfare of the adjacent residential neighborhoods.”
In its judgment, the circuit court correctly stated that the City’s decision was not arbitrary or capricious because
“the Birmingham City Council considered the seven factors spelled out in the statute. In considering these factors, the Council could have reasonably determined that the granting of a liquor license to [Biggs and the LLC] could create a nuisance or otherwise adversely affect the public health, safety, and welfare of the adjacent residential neighborhoods.”
The judgment of the Jefferson Circuit Court is affirmed.
AFFIRMED.
THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

"1 Birmingham's nine Council Districts are divided into 23 communities and 99 individual Neighborhoods. This structure was created to improve communication between resident and city leaders. The neighborhood associations are consulted on matters such as zoning changes and the issuance of liquor licenses."

. UNTA did not appeal from the judgment.

. Birmingham is a Class 1 municipality, as defined in § 11-40-12, Ala.Code 1975, because its population was more than 300,000 inhabitants as certified by the 1970 federal decennial census. See Madaloni v. City of Mobile, 37 So.3d 739, 745 n. 5 (Ala.2009). See also Phillips v. City of Citronelle, 961 So.2d 827, 830 n. 2 (Ala.Civ.App.2007) (stating that, "[t]o the extent that State Alcoholic Beverage Control Board v. Shabani, 819 So.2d 46, 48 n. 1 (Ala.Civ.App.2000), and City of Montgomery v. Glenn, 749 So.2d 478, 479 (Ala.Civ.App. 1999), intimate that an Alabama municipality may ‘grow into' or ‘shrink out of a particular population class defined in § ll-40-12(a), Ala.Code 1975 — a statute that ... uses the 1970 federal census as its reference point — so as to move into or out of the scope of § 28-1-6 and § 28-1-7, those cases appear to be in error”).